United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIO CARRIOLLO,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No.  3:26 -cv-05836-JSC

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 3

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order (TRO). (Dkt. No. 3.)  On June 15, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order seeking his release from custody and to enjoin Defendants from re-detaining him absent prior notice and a pre-deprivation hearing. (Dkt. No. 3.)  For the following reasons, the TRO is GRANTED.

**BACKGROUND**

According to the record before the Court, Petitioner, who is originally from Brazil, entered the United States on March 18, 2019 on a B-2 visa.  (Dkt. No. 1 at ¶ 1.)  In May 2023, he married a United States citizen with whom he has three United States citizen children.  (*Id*.)  Petitioner is an asylum applicant and beneficiary of an I-130 Petition for Alien Relative, filed for him by his United States Citizen wife. The form I-130 as well as form I-485 (Application to Register Permanent Residence or Adjust Status) and I-765 (Application for Employment Authorization). (*Id*. at ¶¶ 3-4.)  Petitioner has no order of removal and has never been placed in removal proceedings.  (Dkt. No. 3-3 at ¶ 3.)

On June 15, 2026, Petitioner arrived at the asylum office for his scheduled asylum interview and ICE officers came into the interview room and handcuffed him.  (Dkt. No. 1 at ¶ 6.)

He was told he was being arrested for overstaying his visa. (*Id*.) An arrest warrant was presented, but not a Notice to Appear. (*Id*.) Upon his arrest, Petitioner had a "sudden, severe panic attack, showing signs of distress." (*Id*. at ¶ 6.) Petitioner suffers from a variety of acute medical conditions including Type 2 diabetes, anxiety disorder, and chronic post-traumatic stress disorder, and takes several medications. (*Id*. at ¶ 2.) He requested his Zoloft (sertraline) prescription to help with his panic attack, but it was at home. (*Id*. at ¶ 6.)

On June 15, 2026, this Petition was filed. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. (Dkt. No. 3-2 at ¶ 9.) The TRO was filed at 12:01 am on June 16, 2026.

**LEGAL STANDARD**

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

United States District Court
Northern District of California

2

423, 439 (1974)).

## DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances).   That the government has not sought to detain Petitioner over the past six years while his immigration applications have been pending reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief.  Petitioner and his wife both have serious medical conditions and he is the primary caretaker for his wife.  The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm.  Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).  "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-

United States District Court
Northern District of California

01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is

4

needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Petitioner from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by **3:00 p.m. June 16, 2026**.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on  **June 29, 2026**, why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion by no later than **June 19, 2026**. Respondents are DIRECTED to address in their response why their actions are not enjoined and in violation of the preliminary injunction issued in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025). Any reply SHALL be filed by **June 24, 2026**. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until **5:00 p.m. on June 30, 2026** or as otherwise directed by the Court.

//

//

//

United States District Court
Northern District of California

5

This Order disposes of Dkt. No. 3.

**IT IS SO ORDERED.**

Dated: June 16, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California